UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DAVID MICHAEL AARON BAKER,

                        Plaintiff,

      v.

CHERYL STRANGE, et al.,

                        Defendants.

Case No. 3:23-cv-5072-RJB-TLF

REPORT AND
RECOMMENDATION

Noted for February 16, 2024

       This matter is before the Court on Defendants' filing of a motion for summary judgment. Dkt. 29. Plaintiff has brought suit under 42 U.S.C. § 1983 against Defendants for allegedly violating his First and Fourteenth Amendment rights when they rejected two forms of sexually explicit materials that were sent to Plaintiff while he was incarcerated within Airway Heights Corrections Center. Dkt. 9 (Complaint). This matter has been referred to the undersigned Magistrate Judge. *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a). For the reasons set forth below, the undersigned recommends the Court should GRANT Defendants' motion for summary judgment and DISMISS Plaintiff's complaint with prejudice.

<u>FACTUAL AND PROCEDURAL HISTORY</u>

       Under Washington Administrative Code (WAC) 137-48-040, "[I]ncoming mail to inmates may be disapproved for receipt" by the Washington State Department of

1   Corrections (DOC), if the mail "is deemed to be a threat to legitimate penological

2   objectives, including but not limited to, sexually explicit materials."

3        WAC 137-48-020 defines "sexually explicit materials" as follows:

4        (13) "Sexually explicit materials" consist of any item displaying, portraying,

5   depicting, or describing:

6        (a) Nudity, which includes exposed/visible (in whole or part, including under or

7   through translucent/thin materials providing intimate physical detail) genitals/genitalia,

8   anus, and/or female/transgender breast nipple(s);

9        (b) A sex act(s) which includes, but is not limited to, genital-genital, oral-genital,

10   anal-genital, or oral-anal contact/ penetration, genital or anal contact/penetration with an

11   inanimate object, masturbation, sadistic/masochistic abuse, bondage, bestiality, and/or

12   bodily excretory behavior which appears to be sexual in nature;

13        (c) A participant(s) who appears to be nonconsenting, dominated, degraded,

14   humiliated, or in a submissive role, and/or acting in a forceful, threatening, dominating,

15   or violent manner which appears to be sexual in nature; and/or

16        (d) Minor(s), or models depicting minors, in a sexually suggestive

17   setting/pose/attire.

18        Under DOC Policy 450.100, mail to or from incarcerated individuals may be

19   rejected on the grounds that it "contains sexually explicit material per WAC 137-48-020,

20   including altered images, strategically placed graphics/items, or airbrushing." *See* Dkt.

21   30 (Declaration of Tracy Schneider), Attachment A, at p. 23. If incoming mail is rejected,

22   an incarcerated individual can appeal the mail rejection to the Superintendent or

23   Designee of the facility; the incarcerated individual will be given notice of the results of

24

25

REPORT AND RECOMMENDATION - 2

1    their appeal. *Id.* at ¶11. If an incoming mail rejection is upheld by the

2    Superintendent/Designee, an incarcerated individual can choose to appeal the decision

3    of the Superintended/Designee to the Correctional Manager at DOC Headquarters. *Id.*

4    at ¶12. The individual is again informed of the results of this second appeal. *Id.*

5         In addition, publications that are initially rejected as sexually explicit material per

6    WAC 137-48-020 may be approved by the Publication Review Committee for artistic,

7    health/medical, and educational purposes. DOC Policy 450.100.

8         On March 14, 2022, an image attached to an incoming a JPay[1] message sent to

9    Plaintiff was rejected by the prison's mailroom staff. *See* Dkt. 30 at Attachment B. The

10   image was a photograph of a nude woman.

11        Plaintiff was provided notice that the image was restricted, and he could appeal

12   this rejection pursuant to DOC policy. *See* Dkt. 30 at Attachment B. Plaintiff appealed

13   the rejection on March 15, 2022; the appeal was reviewed by Defendant Westfall, the

14   facility's mailroom sergeant at the time. *See* Dkt. 30 at Attachment C. Defendant

15   Westfall upheld the initial decision of rejecting the JPay message because it met the

16   definition of "sexually explicit material" as defined under WAC 137-48-20 and DOC

17   Policy 450.100. *See id*. Plaintiff filed a second appeal, which was reviewed by DOC

18   Headquarters. On April 20, 2022, DOC Headquarters affirmed Defendant Westfall's

19   decision to reject Plaintiff's mail under WAC 137-48-20. *See id.* at Attachment D.

20        On January 12, 2023, the prison's mailroom staff rejected a copy of the Sports

21   Illustrated Swimsuit Edition magazine that was sent to Plaintiff because it contained

22   sexually explicit material. *Id.* at Attachment E. Plaintiff appealed this rejection to the

23

24   ───────────────
     [1] JPay is a private company that provides an electronic messaging service. *See* Dkt. 30 at ¶3.

25

REPORT AND RECOMMENDATION - 3

1    Superintendent designee, who upheld the rejection, noting that "[t]he magazine had

2    multiple pictures of female breast nipples visible through translucent clothing. There is a

3    picture of five completely nude children which shows full frontal nudity to include

4    genitals, the children appear to be between the ages of six and 12 years old." *Id.* at

5    Attachments F and G.

6                                                    DISCUSSION

7          **A.  Summary Judgment Standard**

8                Summary judgment is supported "if the pleadings, the discovery and disclosure

9    materials on file, and any affidavits show that there is no genuine issue as to any

10   material fact and that the movant is entitled to judgment as a matter of law." Federal

11   Rule of Civil Procedure (FRCP) 56(c). The moving party bears the initial burden to

12   demonstrate the absence of a genuine dispute of material fact for trial. *Celotex Corp. v.*

13   *Catrett,* 477 U.S. 317, 323 (1986). A genuine dispute concerning a material fact is

14   presented when there is sufficient evidence for a reasonable jury to return a verdict for

15   the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986). A

16   "material" fact is one which is "relevant to an element of a claim or defense and whose

17   existence might affect the outcome of the suit," and the materiality of which is

18   "determined by the substantive law governing the claim." *T.W. Elec. Serv., Inc. v. Pacific*

19   *Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

20              When the Court considers a motion for summary judgment, "[t]he evidence of the

21   non-movant is to be believed, and all justifiable inferences are to be drawn in [their]

22   favor." *Id.* at 255. Yet the Court is not allowed to weigh evidence or decide credibility.

23   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255. If the moving party meets their initial

24   burden, an adverse party may not rest upon the mere allegations or denials of their

25

1  pleading; their response, by affidavits or as otherwise provided in FRCP 56, must set

2  forth specific facts showing there is a genuine issue for trial. FRCP 56(e)(2). The Court

3  may not disregard evidence solely based on its self-serving nature. *Nigro v. Sears,*

4  *Roebuck & Co.,* 784 F.3d 495, 497 (9th Cir. 2015).

5  In response to the motion for summary judgment, the nonmoving party is

6  required to present specific facts, and cannot rely on conclusory allegations. *Hansen v.*

7  *U.S.,* 7 F.3d 137, 138 (9th Cir. 1993). The court must determine whether the specific

8  facts that are presented by the non-moving party, considered along with undisputed

9  context and background facts, would show that a rational or reasonable jury might

10 return a verdict in the non-moving party's favor based on that evidence. *Emeldi v.*

11 *University of Oregon,* 698 F.3d 715, 728-29 (9th Cir. 2012).

12 **B.  42 U.S.C. § 1983**

13 To state a claim under 42 U.S.C. § 1983, a complaint must allege: (a) the

14 conduct complained of was committed by a person acting under color of state law, and

15 (b) the conduct deprived a person of a right, privilege, or immunity secured by the

16 Constitution or laws of the United States. *See Parratt v. Taylor*, 451 U.S. 527, 535

17 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986). Section

18 1983 is the appropriate avenue to remedy an alleged wrong only if both of these

19 elements are present. *See Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985).

20 Plaintiff must show that each named defendant, through their own individual

21 actions, violated Plaintiff's constitutional rights. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676

22 (2009). Liability under § 1983 arises upon a showing of personal participation by each

23 defendant, and a supervisor is not liable for the constitutional violations of employees

24

25

unless the supervisor "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Supervisory prison officials may be liable under § 1983 if they were 'personally involved in the constitutional deprivation or a sufficient causal connection exists between [their] unlawful conduct and the constitutional violation.' " *Rico v. Ducart*, 980 F.3d 1292, 1303 (9th Cir. 2020) (quoting *Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1085 (9th Cir. 2013)). "This causal connection can be established by 'knowingly refusing to terminate a series of acts by others, which the supervisor[s] knew or should have known would cause others to inflict a constitutional injury.' " *Id.* (quoting *Starr v. Baca*, 652 F.3d 1202, 1207–08 (9th Cir. 2011)).

### C. Plaintiff's Claims Against Defendants Strange, Key, Haynes, Rivera and Heinrich

While Plaintiff names Strange, Key, Haynes, Rivera and Heinrich as defendants, Plaintiff presents no evidence implicating their personal involvement in reviewing Plaintiff's incoming mail, either initially or on appeal. Additionally, to the extent these Defendants are included due to their roles as supervisors, Plaintiff presents no evidence they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d, 1040,1045 (9th Cir. 1989). As such, Defendants Strange, Key, Haynes, Rivera and Heinrich's motion for summary judgment should be GRANTED.

### D. Plaintiff's First Amendment Claims

Plaintiff alleges that this First Amendment rights were violated when Defendants rejected his JPay message and Sports Illustrated magazine because the mailings contained sexually explicit material.

REPORT AND RECOMMENDATION - 6

1        Plaintiff appears to raise both a facial and as-applied challenge to the rejection of

2   his mailings. The Ninth Circuit has held that the difference between as-applied and

3   facial challenges "lies only in whether all or only some ... subrules (or fact-specific

4   applications) are being challenged, the substantive legal tests used in the two

5   challenges are 'invariant.' " *Hoye v. City of Oakland,* 653 F.3d 835, 857 (9th Cir. 2011).

6   "The *Turner* analysis applies equally to facial and 'as applied' challenges." *Bahrampour*

7   *v. Lampert*, 356 F.3d 969, 975 (9th Cir. 2004) (*citing Morrison v. Hall,* 261 F.3d 896,

8   905, 907 (9th Cir. 2001)); *See Turner v. Safely,* 482 U.S. 78, 89-90 (1987). Thus, the

9   Court proceeds by considering Plaintiff's allegations jointly under *Turner.*

10       Inmates have "a First Amendment right to send and receive mail." *Witherow v.*

11  *Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (per curium). However, an inmate's First

12  Amendment rights are "necessarily limited by the fact of incarceration, and may be

13  curtailed in order to achieve legitimate correctional goals or to maintain prison security."

14  *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987). "When a prison regulation

15  impinges on inmates' constitutional rights ... the regulation is valid if it is reasonably

16  related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987);

17  *Thornburgh v. Abbott*, 490 U.S. 401, 413-14 (1989).

18       In determining whether a prison regulation regarding incoming mail is reasonably

19  related to a legitimate penological interest, the following factors are considered: (a)

20  whether there is a valid, rational connection between the regulation and the interest

21  used to justify the regulation; (b) whether prisoners retain alternative means of

22  exercising the right at issue; (c) the impact the requested accommodation will have on

23  inmates, prison staff, and prison resources generally; and (d) whether the prisoner has

24

25

1  identified easy alternatives to the regulation which could be implemented at a minimal

2  cost to legitimate penological interests. *Turner*, 482 U.S. at 89-91; *Thornburgh*, 490 U.S.

3  at 413-14.

4  　　　As a threshold matter, Defendants have cited several valid penological interests

5  that are served by restricting prisoner access to sexually explicit materials. Dkt. 30,

6  Schneider Declaration, at ¶4. Tracy Schneider, a Correctional Manager, explains that

7  sexually explicit material presents a threat to the safety and security of incarcerated

8  individuals and staff within the facilities. *Id.* Sexually explicit material is continually being

9  used as a form of currency in prison; negotiations take place between incarcerated

10  individuals where sexually explicit material is traded for other products or services. The

11  use of sexually explicit material as currency also leads to the coercion and strong-

12  arming of incarcerated individuals, with threats made against those who will not share

13  sexually explicit material with others. *Id.* Further, sexually explicit material also poses a

14  threat to the safety of staff members and other incarcerated individuals, as incarcerated

15  individuals' viewing of sexually explicit material leads to increased instances of sexual

16  harassment against incarcerated individuals and staff, especially female staff. *Id.* at ¶5.

17  　　　Courts have recognized a "valid, rational connection between the prison

18  regulation" and these concerns. *See Thornburgh*, 490 U.S. 401 (upholding the validity of

19  a federal prison regulation restricting sexually explicit material); *Mauro v. Arpaio,* 188

20  F.3d 1054, 1057–63 (9th Cir. 1999) (en banc) (upholding a similar Arizona regulation

21  which prohibited prisoners from possessing "sexually explicit materials," defined as

22  "materials that show frontal nudity," including "personal photographs, drawings, and

23  magazines and pictorials that show frontal nudity"); *Bahrampour v. Lampert,* 356 F.3d

24

25

969, 979 (9th Cir. 2004) (finding prison officials may prohibit receipt of sexually explicit

materials in light of concerns about preventing the sexual harassment of prison guards

and other inmates); *Frost v. Symington,* 197 F.3d 349, 357 (9th Cir. 1999) (applying the

Supreme Court's *Turner* test to find a regulation prohibiting receipt of sexually explicit

images in the prison did not unconstitutionally abridge the inmate's First Amendment

rights); *Powell v. Riveland*, 991 F.Supp. 1249, 1254 (W.D. Wash. 1997) (finding DOC

Policy 450.100 was parallel to the regulation upheld in *Thornburgh* and therefore facially

valid); *Clark v. Mason*, 2007 WL 2417154, at *17 (W.D. Wash. Aug. 20, 2007) (same);

*Grenning v. Klemme,* 34 F.Supp.3d 1144, 1155 (E.D. Wash. 2014) (holding "no

constitutional right is violated when prison staff refuse to deliver sexually explicit

materials to an inmate because it is reasonably related to penological interests").

Plaintiff claims the JPay message and Sports Illustrated magazine depict

modeling and have artistic value. This appears to be based on nothing more than

Plaintiff's subjective opinion.

It is uncontested that under DOC policy 450.100, publications "initially rejected as

sexually explicit material per WAC 137-48-020 may be approved by the committee for

artistic, health/medical, and educational purposes." This approval is discretionary. The

JPay message depicted a nude woman and the Sports Illustrated magazine had

multiple depictions of women in translucent clothing that showed female nipples and/or

areolas, exposed buttocks, and an image of five completely nude children that displayed

full frontal nudity including exposed genitalia. Plaintiff contends that the Sports

Illustrated magazine could not have contained images of nude children. This statement,

however, is conclusory and is simply based on his belief. Further, even if the magazine

did not contain images of nude children, images of women in translucent clothing that showed female nipples and/or areolas, exposed buttocks still falls within the category of "sexually explicit" and can be rejected.

Plaintiff's opinion that the JPay message and magazine should have been approved as having artistic value does not overcome Defendants' legitimate penological interest in prohibiting sexually explicit mail.

The second *Turner* factor of an "alternative means" is satisfied because Plaintiff may receive mailings that do not depict nudity or sexually explicit content. Plaintiff has not presented evidence to show that he's unable to receive mail or publications that comply with Wash. Admin. Code § 137-48-020(13)(a). The third *Turner* factor regarding the impact of an accommodation on others is met because allowing sexually explicit images would have a profound impact of violence and other aggressive behaviors against inmates and staff. The final *Turner* factor is satisfied because there is no evidence of any reasonable alternative to the restriction.

Plaintiff's suggested alternative to the Department's exclusion of sexually explicit material is to "create an atmosphere that represents society and pro social behavior." Dkt. 34, at 13. This is not a workable alternative, in light of the difficulty asserting any control over atmosphere in which reactions to these photographs will vary from one person to the next.

Thus, there is no genuine dispute of material fact as to whether Plaintiff's message implicated the valid penological interest of security in prohibiting sexually

explicit material, or whether Defendants' actions in rejecting the letter were reasonable[2].

Because the rejection of Plaintiff's JPay message and magazine were reasonably

related to legitimate penological interests, this does not give rise to a First Amendment

violation. Plaintiff has not shown that the DOC's regulation prohibiting incoming sexually

explicit mail was either unconstitutional on its face or as applied. The Court

recommends that Defendants' motion for summary judgment should be GRANTED as

to this claim.

### E.  Plaintiff's Equal Protection Clause Claim

The Fourteenth Amendment right to equal protection is applicable during

incarceration. *See e.g., Baumann v. Arizona Dep't of Corrections*, 754 F.2d 841 (9th Cir.

1985). Where a plaintiff does not allege a violation of a fundamental right or the

existence of a suspect classification, in order to satisfy the equal protection clause

prison officials need only show that their policies bear a rational relationship to a

legitimate penological interest. *See Hill v. Washington State Dep't of Corr.*, 628 F. Supp.

2d 1250, 1262 (W.D. Wash. 2009); *see also Turner,* 482 U.S. at 89–90; *Coakley v.

Murphy*, 884 F.2d 1218, 1221–22 (9th Cir. 1989).

Plaintiff does not allege a violation of a fundamental right, as there is no

fundamental right to having sexually explicit material in prison. To the extent he claims

that as a heterosexual male, he is being "targeted" because "male models are not

---

[2] As discussed above, Defendants Strange, Key, Haynes, Rivera and Heinrich did not personally participate in Plaintiff's alleged constitutional violations. Further, while Defendant Westfall reviewed Plaintiff's first appeal of the rejection of his JPay message, Defendant Westfall had no further involvement. He did not review Plaintiff's second appeal or any appeal relating to the Sports Illustrated magazine. He retired from DOC in June 2022, which was prior to the date on which DOC rejected the Sports Illustrated magazine. Dkt. 26 (Answer) at ¶3.15.

1    subject to the same scrutiny", Plaintiff's claim is conclusory, and unsupported by any

2    proof; it fails as a matter of law. Dkt. 9; Dkt. 34 at 11.

3          There is no basis for concluding that the mail policy is not applicable to materials

4    depicting male models. The policy clarifies that publications will not be withheld based

5    solely on their appeal to a particular sexual orientation. Dkt. 30 at Attachment A, p. 20.

6    It also restricts representations of the genitals/genitalia of either gender. *See* WAC §

7    137–48–020(13)(a). Furthermore, Plaintiff does not show the DOC acted with an intent

8    or purpose to discriminate against heterosexual males in adopting its policy. Without

9    such a showing, Plaintiff's equal protection claim necessarily fails. *See Pers. Adm'r of*

10   *Mass. v. Feeney,* 442 U.S. 256, 279 (1979) (" 'Discriminatory purpose' ... implies more

11   than intent as volition or intent as awareness of consequences. It implies that the

12   decisionmaker ... selected or reaffirmed a particular course of action at least in part

13   'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group.")

14   (citation and footnote omitted). Therefore, Defendants' motion for summary judgment on

15   Plaintiff's Equal Protection claim should be GRANTED.

16        **F. Plaintiff's Due Process Clause Claim**

17        Plaintiff claims that because DOC did not process his appeal of their rejection of

18   the Sports Illustrated magazine as a "publication appeal," his due process rights were

19   violated. He further claims that he did not receive the notice of rejection of this appeal

20   since he had already been transferred out of Airway Heights to Olympic Corrections

21   Center.

22        Prisoners have a liberty interest in the receipt of mail, which triggers procedural

23   due process guarantees. *Krug v. Lutz,* 329 F.3d 692, 696-967 (9th Cir. 2003). If prison

24

25

officials withhold mail, a prisoner has due process right to receive notice that his

incoming mail is being withheld. *See Frost v. Symington,* 197 F.3d 348, 353-54 (9th Cir.

1999); *see also Prison Legal News v. Cook,* 238 F.3d 1145, 1152-53 (9th Cir. 2001)

(holding that due process rights apply to withheld mail where prisoners had

constitutionally protected right to receive the mail).

Prisoners have a due process right to appeal the exclusion of mail to a prison

official other than the one who made the initial exclusion decision. *See Krug,* 329 F.3d

at 697-98 & n. 5 (holding that due process safeguards of *Martinez,* and not *Turner*

reasonableness standard, apply to withholding delivery of incoming publications, and

prison's policy of not providing two-level review violates prisoner's procedural due

process rights).

In this case, the undisputed evidence shows that Plaintiff had the requisite due

process notice and right to appeal. Specifically, the record reflects that Plaintiff received

notice that his mailings had been rejected. Dkt. 30 at Attachments B and E. The record

further shows that Plaintiff appealed the rejection of his mailings. Dkt. 30 at Attachments

C, D, G. Plaintiff's appeals were reviewed by a staff member other than the person who

initially issued the rejection. Contrary to Plaintiff's assertion, his appeal relating to the

Sports Illustrated magazine did only had to be reviewed by a prison official *other than*

the one who made the initial exclusion decision, which is what occurred in this case.

With respect to Plaintiff's second claim -- that he did not receive notice that DOC

rejected his second appeal of its decision to exclude the Sports Illustrated magazine --

the rejection notice of his appeal was dated February 10, 2023. *See* Dkt. 30 at

Attachment G. Plaintiff notified the Court that his transfer to Olympic Corrections Center

1  was scheduled for February 13, 2023. Dkt. 5. In any case, Plaintiff was still provided

2  with the minimum procedural safeguards, a two-level review of the DOC's determination

3  that his mail was rejected. Dkt. 30 at Attachments E and G.

4      Thus, the Court recommends that Defendants' motion for summary judgment be

5  GRANTED as to this claim.

6      **G.  Qualified Immunity**

7      The Court should also grant Defendants' motion for summary judgment with

8  respect to Plaintiff's request for damages because the Defendants are entitled to

9  qualified immunity. Unless a plaintiff makes a two-part showing, qualified immunity

10  shields government officials from liability. The plaintiff must show both: (a) that the

11  official(s) violated a federal statutory or constitutional right and (b) that—at the time of

12  the alleged act or failure to act—there was clearly established law that defined the

13  contours of the federal right, such that every reasonable official would understand that

14  what they are doing is unlawful. *Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019).

15      When qualified immunity is reviewed in the context of a defense motion for

16  summary judgment, the evidence must be considered in the light most favorable to the

17  plaintiff with respect to central facts. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per

18  curiam). If there is a genuine issue of material fact concerning both: (1) Whether it

19  would be clear to a reasonable officer that their conduct was unlawful under the

20  circumstances they confronted, and (2) Whether the defendant's conduct violated a

21  constitutional right" then summary judgment granting qualified immunity is not

22  appropriate. *Bonivert v. City of Clarkson,* 883 F.3d 865, 871-72 (9th Cir. 2018).

23

24

25

REPORT AND RECOMMENDATION - 14

As discussed above, viewed in the light most favorable to Plaintiff, the facts do not show that Defendants' acts violated plaintiff's Constitutional rights. Accordingly, Defendants are entitled to qualified immunity because the first prong of the qualified immunity test is not satisfied.

**H.  Injunctive Relief**

In his complaint, Plaintiff states that in addition to monetary damages, he seeks the Court to order DOC to "honestly evaluate material as a whole" and "end the infringement" of his constitutional rights. Dkt. 9 at 12.

Injunctive relief is a drastic remedy that should only be granted sparingly. *See Munaf v. Geren*, 553 U.S. 674, 689-90 (2008); *Rizzo v. Goode*, 426 U.S. 362, 378-79 (1976). To be entitled to a permanent injunction, the party seeking the injunction must actually succeed on the merits. *See e.g., Valley View Health Care Inc. v. Chapman*, 992 F. Supp. 2d 1016, 1042 (E.D. Cal. 2014). Additionally, a party must show: (1) that the party has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

Plaintiff is not entitled to injunctive relief because, as discussed above, he has failed to show a triable issue on the merits of his claims.

<u>IN FORMA PAUPERIS STATUS ON APPEAL</u>

The Court must also decide whether Plaintiff's *in forma pauperis* status should continue on appeal. *See* 28 U.S.C. §1915(a)(3) ("an appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith"). The Court

1  must determine whether appeal is frivolous or malicious, or whether it fails to state a

2  claim on which relief may be granted.  *See* 28 U.S.C. §1915(e)(2)(B)(i)&(ii).

3      While the Court was not persuaded on the merits of Plaintiff's claim, there is no

4  evidence that his appeal is frivolous or is taken in bad faith. Accordingly, the Court

5  recommends that *in forma pauperis* status should continue on appeal.

6                                CONCLUSION

7      Based on the foregoing discussion, the undersigned recommends the Court

8  GRANT Defendants' motion for summary judgment and dismiss Plaintiff's complaint. A

9  proposed order and proposed judgment are attached.

10     Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall

11  have fourteen (14) days from service of this report to file written objections. *See also*

12  Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for

13  purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can

14  result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474

15  U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations

16  omitted). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the Clerk is

17  directed to set the matter for consideration on February 16, 2024, as noted in the

18  caption.

19     Dated this 26th day of January, 2024.

20

21

22     Theresa L. Fricke
       United States Magistrate Judge

23

24

25

REPORT AND RECOMMENDATION - 16